

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 1 8 2011

CLERK, U.S. DISTRICT COURT
by_____
Deputy

JUNIE S. AZLIN, ET AL.,          §
                                 §
        Plaintiffs,              §
                                 §
VS.                              §   NO. 4:11-CV-688-A
                                 §
SILICON VALLEY, INC., d/b/a      §
IVERSON BUSINESS SCHOOL AND      §
COURT REPORTING,                 §
                                 §
        Defendant.               §

MEMORANDUM OPINION
and
ORDER

The court has not been persuaded that it has subject matter jurisdiction over the above-captioned action. Therefore, the court is ordering the action be remanded to the state court from which it was removed.

I.

Background

This action against defendant, Silicon Valley, Inc., d/b/a/ Iverson Business School and Court Reporting, was filed in the 236th District Court of Tarrant County, Texas in case No. 236-254514 on August 10, 2011, by plaintiffs, Junie S. Azlin, Amanda Cardenas, Gilbert Collier, Mark Gonzales, Jill Green, Corinthia Hall, Melinda Humphreys, Vanetta Brown-Johnson, Kijakazi Tunu, Tawanna Matassa-Baker, Zipporah Lucre, Jackie Molett, Allen

Phipps, Lucy Rodriguez, Norma Rodriguez, Shonda Renfro, Kayvon Rodgers, Nicholas Roy, Sottana Shorts, Patronica Smith, Tiffany Torres, Calisha Tucker, and Jose Valdivia. Defendant removed the case to this court on September 29, 2011. On October 4, 2011, the court ordered that defendant file an amended notice of removal, and that plaintiffs file an amended complaint, properly alleging the parties' state of citizenship. On October 14, 2011, the court ordered that the parties each submit a brief on the subject of whether the amount in controversy exceeds $75,000. Now before the court are an amended notice of removal, a document titled "Defendant's Brief in Support of Diversity Jurisdiction" filed by defendant, plaintiff's first amended complaint ("complaint"), and a document titled "Plaintiffs' Brief Pertaining to Amount in Controversy" filed by plaintiffs.

The complaint made the following allegations: In a prior suit, originally filed in state court and subsequently removed to federal court in case No. 4:08-CV-284-Y,[1] plaintiffs had alleged claims against defendant for violations of the Texas Deceptive Trade Practices Act and breach of contract. The parties settled, and all the plaintiffs and defendant signed and executed "a

---

[1] Plaintiffs incorrectly referred to the prior action as case No. 4:08-CV-284-4 in their pleadings. Pls.' Am. Compl. at 6. A review of court records confirms that case No. 4:08-CV-284-Y is the correct docket number for the prior action.

2

settlement agreement that was reduced to a valid contractual document." Pls.' Am. Compl. at 6. The "settlement contract" required payments from defendant in "periodic installments." Id. The contract provided that "if, on the date the payment is due, making the payment would cause [defendant's] Federal Student Aid Composite Score to decline to less than an agreed upon level, the payment is not due at that time." Id. at 6-7. It is further agreed that "[i]f such payment is excused under this scenario," then "interest begins to accrue." Id. at 6. After making the first and second payment, defendant failed to make its third or fourth payments, due January 15, 2011, and July 15, 2011, respectively. Id. at 6-7. Defendant claimed that making such payments would lower its score to less than 1.5. Id. at 7. Plaintiffs' counsel made several attempts, albeit unsuccessfully, to gain "credible, verifiable" financial information and data from defendant to support its assertion "that payment would cause the ratio to be adversely affected to the degree that [d]efendant asserts." Id. at 7-8. As of the date of the filing of the complaint, plaintiffs had not received the requested information or the past due installment payments from defendant. Id. at 8.

The twenty-three named plaintiffs then filed the instant action in state court, alleging claims of breach of contract

against defendant.  As relief, in addition to attorney's fees,

plaintiffs seek:

> 1.   Specific performance of the Contract by ordering
>      Defendant to provide the installment payments,
>      both past and present, according to the schedule
>      set out in the Contract;
> 2.   A declaratory judgment of this Court, and
>      appropriate injunctive relief, requiring that
>      Defendant provide the calculation of ratios and
>      the underlying data relied upon to support any
>      future assertions of inability to perform under
>      the Contract at least two weeks prior to the due
>      date of future installment payments by Defendant
>      if such payments are to be delayed.

Id. at 9.

Defendant removed the case based on diversity jurisdiction.

See 28 U.S.C. § 1332; § 1441(a).  On October 31, 2011, defendant

filed an answer and a counterclaim for breach of contract, along

with a request for attorney's fees and a declaratory judgment

"stating that Plaintiffs are not entitled to review [defendant's]

private financial records."  Def.'s Answer, Affirmative Defenses,

and Countercl. at 10.  Additionally, defendant stated in its

answer that it had "entered into a settlement agreement with each

of the Plaintiffs (Settlement Agreements) and not one settlement

agreement as averred" in the complaint.  Id. at 3.

The issue the court has raised sua sponte is whether the

amount in controversy has been met for the court to exercise

subject matter jurisdiction over the action.  See Howery v.

4

Allstate Ins. Co., 243 F.3d 912, 919 (5th Cir. 2001).  While

there is complete diversity of citizenship between the parties,

the court has not been persuaded that the amount in controversy

exceeds $75,000.  Both plaintiffs and defendants have had an

opportunity to address this issue in their briefs.  Whereas

plaintiffs argue that plaintiffs' claims may not be aggregated to

satisfy the minimum amount in controversy, defendant argues that

plaintiffs' claims, which seek recovery from identical settlement

contracts, should be aggregated to meet the jurisdictional

threshold.

II.

Analysis

The court begins by noting that "[t]he burden of

establishing subject matter jurisdiction in federal court rests

on the party seeking to invoke it." St. Paul Reinsurance Co.,

Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998).

Diversity jurisdiction requires that the "matter in controversy

exceed[] the sum or value of $75,000, exclusive of interest and

costs." 28 U.S.C. § 1332(a).  Generally, the amount of damages

claimed by the plaintiff controls if it appears the claim is made

in good faith. St. Paul Mercury Indem. Co. v. Red Cab Co., 303

U.S. 283, 288 (1938); Allen v. R & H Oil & Gas Co., 63 F.3d 1326,

1335 (5th Cir. 1995).  When the complaint does not state the

dollar amount of damages sought, the defendant must prove by a preponderance of the evidence that the damages claimed exceed $75,000.  Allen, 63 F.3d at 1335.  Conclusory allegations by the defendant concerning the amount in controversy are insufficient to establish a basis for removal.  Id.

A defendant may establish that the amount in controversy satisfies the jurisdictional minimum in two different ways. First, it may show that it is "facially apparent" that the amount in controversy exceeds $75,000, by demonstrating that the plaintiff's claims, if vindicated, would yield damages greater than this amount.  De Aguilar v. Boeing Co., 47 F.3d 1404, 1411 (5th Cir. 1995).  Second, if the amount in controversy is not facially apparent, the defendant may produce summary judgment-type evidence to show that the amount in dispute satisfies the jurisdictional minimum.  Allen, 63 F.3d at 1335.

The court concludes that defendant fails under either method to establish that amount in controversy exceeds $75,000 as § 1332(a) requires.  First, defendant has not shown that it is "facially apparent" that the amount in controversy satisfies the jurisdictional minimum.  The amended notice of removal contains the following statement concerning the amount in controversy:

> . . . Because the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and because the parties are citizens of different States,

6

diversity jurisdiction over this matter exists pursuant
to 28 U.S.C. § 1332.  Thus, this action is properly
removed to this Court pursuant to 28 U.S.C. §§ 1441(a)
and 1446.  In addition, this Court may properly
exercise continuing jurisdiction over the settlement
agreements which were reached when this case was
resolved and dismissed in 2009.

Am. Notice of Removal at 2.

Defendant's conclusory assertions are not supported by the

complaint's plain language, which contains no statement alleging

any amount in controversy in excess of $75,000.  For their

requested relief, plaintiffs do not pray for any specific dollar

amount of damages, but instead pray for specific performance of

the settlement contract and a declaratory judgment requiring

defendant to provide information to support its calculation of

the Federal Student Aid Composite score.  See Pls.' Am. Compl. at

9.  Likewise, in the section titled "Damages," plaintiffs allege

no dollar amount in their pleading:

> . . . As a direct and proximate result of the
> Defendant's breach[,] Plaintiffs have been damaged
> through non-payment of the periodic settlement payments
> agreed upon within the terms of the Contract.

Id. at 9.  In effect, there are no allegations of any kind

establishing the amount of damages in the complaint.

The court turns next to the summary judgment-type proof

addressing the amount in controversy.  Although plaintiffs'

complaint refers to the existence of one "settlement contract,"

7

the evidence submitted by both parties shows the existence of
multiple settlement contracts; in other words, defendant entered
into a separate settlement contract with each plaintiff.  Akber
Mithani, President of Silicon Valley, Inc., stated that defendant
"entered into certain settlement agreements" with plaintiffs and
repeatedly refers to such settlement agreements in the plural.
Def.'s Br., Mithani Dec. 2, Ex. 1.  Julie Johnson, counsel for
plaintiffs, also stated that she "negotiated and approved
settlement agreements for each of [the plaintiffs] with
[d]efendant."[2]  Pls.' Br., Johnson Aff. 2.

   With that in mind, the court turns to the parties' arguments
concerning the aggregation of plaintiffs' claims.  Plaintiffs
contend that the amounts may not be aggregated because each of
their claims are separate and distinct.  In response, defendant
argues that plaintiffs' claims have a common and undivided
interest--even though each plaintiff has a separate settlement
agreement with defendant--because each plaintiff's right to
payment is conditioned on payment to all of the plaintiffs.  As

_____

[2] The affidavit of Julie Johnson states, in relevant part:
   Each of these settlement documents were distinct written agreement [sic] between the
   individual Plaintiff and Defendant.  No Plaintiff was a signatory on more than one
   settlement agreement.  No settlement agreement gave rights of collection or ownership to
   more than one Plaintiff.  No single settlement agreement involved total payments of over
   $20,000.00 to any individual Plaintiff.
Pls.' Br., Johnson Aff. 2.

support, defendant asserts that Section 2(c) of the settlement

agreements uniformly states:

> None of the installments set forth in paragraph 2(b)
> shall be due if, on the date the payment is due, making
> the installment in the aggregate to all settling
> Plaintiffs would render Iverson's Federal Student Aid
> Composite Score less than [a confidential composite
> score.]

Def.'s Br. at 4.  Defendant did not include a copy of the

settlement agreement itself but instead relied upon Mithani's

declaration and a spreadsheet to show that in the aggregate,

"[t]he total amount outstanding and for which Plaintiffs have

brought this breach of contract action is $170,850."  Mithani

Dec. 2.  The spreadsheet further shows that the individual

amounts outstanding for each plaintiff vary from a low of $3,800

for Amanda Cardenas to a high of $10,650 for Jackie Molett.

Mithani Dec. Ex. 1.

The Fifth Circuit has held that when multiple plaintiffs

have "separate and distinct" claims, those claims may not be

aggregated to satisfy the amount in controversy.  Allen, 63 F.3d

at 1330.  Aggregating claims is only permitted where "two or more

plaintiffs unite to enforce a single title or right in which they

have a common and undivided interest."  Id.  Plaintiffs have a

common and undivided interest if their claims arise from the same

source and they have one right of recovery.  Id. at 1331.

Guided by the rule in <u>Allen</u>, the court concludes that defendant may not aggregate plaintiffs' separate claims in order to meet the minimum amount in controversy.  Here, plaintiffs allege damages stemming from defendant's failure to make payments on settlement agreements that each plaintiff had with defendant. Such claims are separate and distinct because they arise out of an alleged contract each individual plaintiff claims to have had with defendant.  Plaintiffs do not have one shared right of recovery; each plaintiff's recovery is independent of the rest, and the presence of any one of them is not necessary to the claims of any other.  The court also remains unconvinced that the language in Section 2(c) of the settlement agreement gives rise to a shared right of recovery, especially given that defendant has not provided the court with a copy of the entire agreement as context for the section quoted in defendant's brief.  Thus, there is nothing to show that each plaintiff is now seeking to recover at least $75,000.

Finally, defendant's last argument--that this court may exercise continuing jurisdiction because it had previous jurisdiction over the parties' prior action--lacks any merit.

The court concludes that defendant has failed to satisfy its burden to show that the amount in controversy exceeds $75,000 as required to establish this court's jurisdiction.  Accordingly,

the court lacks subject matter jurisdiction over the action and
is remanding it to the state court from which it was removed.

III.

Conclusion

For the reasons given above,

The court ORDERS that the above-captioned action be, and is
hereby, remanded to the state court from which it was removed.

SIGNED November 18, 2011.

_____
JOHN McBRYDE
United States District Judge